**WILLIAMS PIPE LINE COMPANY,**
a Delaware corporation,
Plaintiff–Appellant,

v.

**EMPIRE GAS CORPORATION,**
a Missouri corporation,
Defendant–Appellee.

No. 95–5053.

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1996.

---

1492

C. Kevin Morrison, John T. Schmidt and Randolph L. Jones, Jr., Conner & Winters, Tulsa, Oklahoma, for Plaintiff–Appellant.

Steven G. Emerson, Thomas H. Davis, Watson & Marshall L.C., Kansas City, Missouri and Jerry Truster, Tulsa, Oklahoma, for Defendant–Appellee.

Before BALDOCK, BRORBY, and KELLY, Circuit Judges.

BALDOCK, Circuit Judge.

██ Under the Interstate Commerce Act, pipeline common carriers are required to establish rates and practices related to the transportation they provide, and file a tariff containing the rates and practices with the Federal Energy Regulatory Commission ("FERC"). 42 U.S.C. § 7172(b), 49 U.S.C. §§ 60501, 10501(a), 10762(a). A filed tariff rate or practice "governs the legal relationship between" a carrier and its shippers, unless subsequently invalidated. *See Maislin Indus., U.S. v. Primary Steel, Inc.*, 497 U.S. 116, 126, 128, 110 S.Ct. 2759, 2765, 2766–67, 111 L.Ed.2d 94 (1990). FERC is empowered "on its own initiative or on complaint" to invalidate a tariff practice if it determines the practice is unreasonable or discriminatory. 49 U.S.C. §§ 10701(a); 10704(f); 10741(a); *see also* 18 C.F.R. §§ 385.206, 385.207 (filing complaint or petition with regulatory agency). The court can invalidate a tariff practice if it determines the practice is contrary to public policy. *See Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 416–21, 79 S.Ct. 1210, 1214–17, 3 L.Ed.2d 1334 (1959).

██ Under the doctrine of primary jurisdiction, a court presented with a question whether a tariff practice is contrary to public policy should, in certain circumstances, refer the matter to the pertinent regulatory agency to allow the agency to make the initial determination. *See id.* at 420–21, 79 S.Ct. at 1216–17; *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–65, 77 S.Ct. 161, 164–66, 1 L.Ed.2d 126 (1956). In the instant case, the district court invalidated on public policy grounds a tariff indemnity provision filed with FERC by Plaintiff Williams Pipe Line Company ("Williams"). We conclude the district court should not have itself determined the validity of the provision in the first instance, but should have stayed proceedings and referred the initial determination to FERC under the doctrine of primary jurisdiction.[1]

## I.

Williams operates a system of interstate pipelines for the transportation of liquid petroleum products, including propane, throughout the midwestern United States. Defendant Empire Gas Corporation ("Empire") is a large retail distributor of propane. Empire consigned propane to Williams, which Williams transported through its pipelines to its delivery terminal in Carthage, Missouri. Federal regulations required Williams to inject the propane with an odorant once the fuel reached the delivery terminal. Williams injected the propane with the odorant ethyl mercaptan. Empire then delivered the propane from Williams' delivery terminal to Empire's customers.

In 1989, two of Empire's customers, Donna Pipes and Mae Cook, were injured in a propane explosion at Ms. Pipes' mobile home in Monett, Missouri. In 1991, Ms. Pipes filed suit against Empire and Williams in Missouri state court; Ms. Cook threatened to sue. In her suit, Pipes asserted numerous breaches of duties owed to her and specifically brought claims against Empire and Williams for negligence, products liability, breach of implied warranty, and negligence per se. Pipes sought compensatory and punitive damages in excess of $2,000,000.

In November 1991, Williams served a demand for defense and indemnity on Empire pursuant to the following tariff indemnity provision, which it had filed with FERC:

> [Empire] agree[s] ... to indemnify, hold harmless and defend [Williams] from and against any and all claims and liabilities based on or arising out of the selection or use of ethyl mercaptan or other odorant designated by [Empire] as an odorant of propane, including any claim against [Williams] for product liability, negligence, breach of warranty or other fault.

Empire refused Williams' demand. Williams subsequently settled Pipes' claims and Cook's potential claims against it for a total of $375,000. Empire conceded that the settlement amount was reasonable.

After settling with Pipes and Cook, Williams brought the instant indemnification action against Empire in federal district court. Williams maintained that it was enti-

---

1. Williams' motion to file a supplemental appendix is granted.

tled to indemnification under its tariff indemnity provision.[2] Williams contended that its tariff indemnity provision constituted a binding contract, which Empire breached by refusing to defend and indemnify Williams against Pipes' claims. Williams sought $375,000 for settlement monies paid and over $50,000 for expenses and attorney's fees incurred in defending the Pipes' suit.

Empire moved for summary judgment, or, in the alternative, stay pending referral of the matter to FERC under the doctrine of primary jurisdiction. Empire asserted that FERC had "uniformly" held unreasonable indemnity provisions like Williams' that purport to indemnify a pipeline carrier for its own negligence. Empire maintained, therefore, that Williams' indemnity provision was void as against public policy.[3]

Williams responded with a motion for partial summary judgment. In response to Empire's arguments, Williams contended that it was not negligent in any respect and that it was seeking indemnity for Empire's conduct under the tariff indemnity provision. Williams maintained, therefore, that any public policy against indemnification for one's own negligence was inapplicable to the instant case. Williams noted that Empire had asserted no other affirmative defenses to the enforcement of its tariff indemnity provision. Accordingly, because Empire conceded that the amount of the settlement was reasonable, Williams maintained it was entitled to partial summary judgment as to the $375,000 settlement monies, leaving for trial only the issue regarding the attorney's fees and costs.

The district court granted Empire's motion for summary judgment and denied Williams' motion for partial summary judgment. The court noted that whether Williams was actually negligent was irrelevant. Rather, the court indicated that "[t]he issue ... is interpretation of [tariff] language, not evidentiary proof of fault."

The court focused on the terms of the tariff indemnity provision, which purported to indemnify Williams "against any and all claims" asserted against it, including claims for its own negligence. The court concluded that "[t]he tariff as written falls within that group which FERC has disapproved"—*i.e.*, provisions that seek to indemnify a pipeline carrier for its own negligence. The court therefore invalidated Williams' tariff indemnity provision. The court noted that the doctrine of primary jurisdiction was not implicated because FERC had already expressed "its view of this type of indemnity provision." This appeal followed.

## II.

On appeal, Williams argues that the court erred by invalidating its tariff indemnity provision. Specifically, Williams maintains that because it was not negligent in any respect in the instant case, any FERC policy against self-indemnification-for-negligence clauses is simply irrelevant. Williams contends that its indemnity provision does not "seek indemnity for [Williams'] own negligence, but rather for any claims arising out of its shippers' decision regarding the selection of odorant to be used." Empire responds that the tariff indemnity provision is invalid because FERC disfavors self-indemnification-for-negligence clauses.

■ "We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court pursuant to. Fed.R.Civ.P. 56(c)." *Wolf v. Prudential Ins. Co.,* 50 F.3d 793, 796 (10th Cir.1995). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### A.

In essence, the parties dispute the validity of the tariff indemnity provision. Williams

---

2. Williams also sought indemnification under common law and restitution theories. Williams does not appeal the district court's grant of summary judgment in favor of Empire on these claims.

3. Empire also contended that Williams' tariff indemnity provision violated 49 U.S.C. § 10741(a)

because it accorded Williams discretion to seek indemnity from one shipper and not another under similar circumstances. The district court did not reach this issue, however, and neither do we. Empire is free to assert this argument before FERC in proceedings, if any, the parties pursue on remand.

contends the tariff indemnity provision is valid because FERC's policy against self-indemnification-for-negligence clauses is inapplicable because Williams was not negligent. Empire argues that the tariff indemnity provision is invalid because FERC has "uniformly" invalidated self-indemnification-for-negligence clauses. Accordingly, the issue before us is whether Williams' tariff indemnity provision is invalid in whole or part as against public policy.

 The question whether a tariff provision is contrary to public policy implicates the doctrine of primary jurisdiction. *See Southwestern Sugar,* 360 U.S. at 420–21, 79 S.Ct. at 1216–17. Although Empire asserted the doctrine of primary jurisdiction before the district court, neither party has raised it on appeal. Nonetheless, because the doctrine of primary jurisdiction "exists for the proper distribution of power between judicial and administrative bodies and not for the convenience of the parties," *Fontan–de–Maldonado v. Lineas Aereas Costarricenses, S.A.,* 936 F.2d 630, 632 (1st Cir.1991) (quotation omitted), we may examine whether it applies sua sponte. *United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956); *see also Mical Communications, Inc. v. Sprint Telemedia, Inc.,* 1 F.3d 1031, 1037–1040 (10th Cir.1993).

### B.

 "The doctrine of primary jurisdiction ... is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *Western Pac. R.R. Co.,* 352 U.S. at 63, 77 S.Ct. at 165. In essence, the doctrine represents a determination that administrative agencies are better equipped than the courts to handle particular questions, and that referral of appropriate questions to an agency ensures desirable uniformity of results. *See id.* at 64–65, 77 S.Ct. at 165–66. Put more concretely,

> The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the "conventional experiences of judges" or "falling within the realm of administrative discretion" to an adminis-

trative agency with more specialized experience, expertise, and insight. Specifically, courts apply primary jurisdiction to cases involving technical and intricate questions of fact and policy that Congress has assigned to a specific agency.

*National Communications Ass'n, Inc. v. American Tel. and Tel. Co.,* 46 F.3d 220, 223 (2d Cir.1995) (citing *Far East Conference v. United States,* 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)).

 The Supreme Court has clarified that the courts invoke the doctrine of primary jurisdiction when its twin purposes are served. *Western Pac. R.R. Co.,* 352 U.S. at 64, 77 S.Ct. at 165. The purposes of the doctrine are to: (1) ensure desirable uniformity in determinations of certain administrative questions, and (2) promote resort to agency experience and expertise where the court is presented with a question outside its conventional experience. *Id.* at 64, 77 S.Ct. at 165.

> Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.

*Id.* at 64–65, 77 S.Ct. at 165–66; *see also Mical Communications,* 1 F.3d at 1038 (doctrine of primary jurisdiction implicated where issue is not within conventional experience of courts, where issue requires administrative discretion, or where resort to agency determination ensures uniformity). Thus, while the court is ultimately the appropriate body to declare a tariff practice void as against public policy, *Southwestern Sugar,* 360 U.S. at 420, 79 S.Ct. at 1216, it should nonetheless refer the initial determination to the regulatory agency where it may benefit from the agency's expertise and insight, and to ensure uniformity. *Western Pac. R.R. Co.,* 352 U.S. at 64, 77 S.Ct. at 165; *see also Southwestern Sugar,* 360 U.S. at 420–22, 79

S.Ct. at 1216–17 (referring issue whether towboat tariff exculpatory clause violated public policy to the Interstate Commerce Commission under primary jurisdiction); *Fontan–de–Maldonado,* 936 F.2d at 631 (referring issue whether airline tariff exculpatory clause violated public policy to the Department of Transportation under primary jurisdiction).

 On the other hand, the Court has made clear that there is no need "to refer the matter of construction to the [agency] if that body has already construed the particular tariff at issue or has clarified the factors underlying it." *Western Pac. R.R. Co.,* 352 U.S. at 69, 77 S.Ct. at 168; *see also Fontan-de–Maldonado,* 936 F.2d at 631 ("Of course, if the agency has already announced its views, there is no need to apply the doctrine."). Whenever the doctrine applies, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Western Pac. R.R. Co.,* 352 U.S. at 64, 77 S.Ct. at 165.

### III.

 We conclude that the determination whether the instant tariff indemnity provision violates public policy requires agency expertise and that uniformity will be best ensured by referring the matter to FERC. A pipeline carrier's allocation of legal responsibility to its shippers for selection of a propane odorant may involve cost-allocation and technical factors unique to the pipeline industry, which are outside the conventional experience of this court. *See Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 305, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976) (determination whether tariff provision is valid oftentimes involves "informed evaluation of the economics or technology of the regulated industry"). Although FERC has generally articulated a policy to reject tariff provisions exculpating a pipeline from its own negligence, *e.g., Pacific Interstate Offshore Co.,* 62 FERC ¶ 61,260, 1993 WL 74247, at *6 (1993); *Texas Eastern Transmission Corp.,* 57 FERC ¶ 61,368, 1991 WL 297914, at *3 (1991); *Sea Robin Pipeline Co.,* 46 FERC ¶ 61,061, 1989 WL 260395, at *2 (1989), neither the parties nor our research has dis-

closed a case where FERC has applied that policy to invalidate the type of tariff indemnity provision before us. It may be that different economic and technical considerations lend validity to the sort of clause before us involving selection of a propane odorant. *Compare Dixie Pipeline Company,* 41 FERC ¶ 62,149, 1987 WL 118431, at *1 (1987) and *Dixie Pipeline Company,* 41 FERC ¶ 62,190, 1987 WL 118723 (1987) (related proceeding) (concluding that broad exculpatory provision involving odorant selection "may be unjust, unreasonable, unduly discriminatory or otherwise unlawful," but apparently terminating lawfulness investigation when carrier withdrew provision), *with Enron Liquids Pipeline Co.,* 42 FERC ¶ 62,014, 1988 WL 243540, at *1 (1988) (accepting broad odorant-selection-exculpatory-provision for filing with the exception that the carrier include a clause relieving shippers of liability for "claims for loss of or damage to product transported or handled."). It is therefore unclear whether FERC would invalidate Williams' tariff indemnity provision.

Even if we were sure that FERC would invalidate the portion of Williams' tariff indemnity provision indemnifying it against claims for negligence, we are not convinced FERC would throw the baby out with the wash, like the district court did. The district court invalidated Williams' tariff indemnity provision in its entirety based on the portion indemnifying Williams against claims for negligence. Contrary to the district court, however, FERC has typically not invalidated an entire tariff indemnity provision because one portion purported to indemnify a carrier against claims for its own negligence. *See, e.g., Pacific Interstate Offshore Co.,* 62 FERC ¶ 61,260, 1993 WL 74247, at *6 (1993) (requiring carrier to amend tariff indemnity clause to exclude indemnification for its own negligence, but leaving rest of provision intact); *Sea Robin Pipeline Co.,* 46 FERC ¶ 61,061, 1989 WL 260395, at *2 (1989) (rejecting only portion of tariff provision indemnifying carrier for its own negligence). Thus, it is unclear what practice FERC would prescribe, considering the specialized factors it is required to note, 49 U.S.C. §§ 10704(b)(2)(A), (B), if it did declare

Williams' practice unreasonable, either in whole or part.[4]

The bottom line is that we are simply not equipped on the record before us, without a solid background understanding of economic and technical facets of the pipeline industry, to declare the instant indemnity provision void as against public policy. We cannot determine whether FERC would consider Williams' tariff indemnity provision unreasonable or discriminatory or otherwise invalid in whole or part. Likewise, we cannot determine what practice FERC would prescribe if it declared Williams' provision invalid in whole or part. Before invalidating a tariff indemnity clause on public policy grounds, which could have potentially far reaching effects in the pipeline industry, we deem it prudent to refer the matter to FERC for initial consideration. This course ensures uniformity and obtains the benefit of FERC's expertise and insight in this area.[5]

We therefore REMAND to the district court with instructions to vacate its judgment, stay proceedings, and refer the matter to FERC to allow the parties to seek FERC's ruling as to whether Williams' tariff indemnity provision is valid, either in whole or part.[6]

REMANDED for further proceedings consistent with this opinion.

---

4. If FERC determines that a particular tariff practice is unreasonable or discriminatory it may prescribe the practice to be followed. 49 U.S.C. § 10704(a)(1). In prescribing the practice to be followed, FERC must consider a host of complex factors, including, *inter alia*, the effect of the prescribed practice on "the movement of traffic by that carrier," and the carrier's need for sufficient revenues "under honest, economical, and efficient management, to let the carrier provide that transportation or service." *Id.* at §§ 10704(b)(2)(A), (B).

5. Contrary to Williams' argument in its brief, FERC consideration of the instant tariff indemnity provision upon referral by the district court would not be time-barred. *See, e.g.,* 18 C.F.R. §§ 385.206 (containing no statute of limitations for complaint or petition for declaratory judgment filed with regulatory agency).

6. Because FERC's determination whether Williams' tariff indemnity clause is valid will control the outcome of the case, we do not reach Williams' arguments that the district court erred in denying its motion for partial summary judgment. After FERC declares its view of the tariff indemnity provision, the parties are free to pursue further proceedings, if any, in the district court that are consistent with this opinion. Depending of course on FERC's resolution, we note that in further proceedings, if any, the district court should not consider Williams' settlement with Pipes and Cook as an admission of negligence on its part. *See Oklahoma Natural Gas Co. v. Mid–Continent Casualty Co.,* 268 F.2d 508, 512 (10th Cir.1959) ("[T]he mere settlement of a claim for personal injuries does not itself establish liability for the accident out of which the injuries arose.").