**In re HEALTHBACK, L.L.C., Debtors.**

**Bankruptcy No. 97–22616–BH.**

United States Bankruptcy Court, W.D. Oklahoma.

July 31, 1998.

James Vogt and Timothy C. Dowd, Reynolds, Ridings, Vogt and Moran, Oklahoma City, OK, for Healthback, L.L.C.

John A. Cogan, Jr., Department of Health and Human Services, Dallas, TX, and Patrick M. Ryan, United States Attorney by Kay Sewell, Assistant United States Attorney, Oklahoma City, OK, for Department of Health and Human Services.

Kiran A. Phansalker, Conner and Winters, Oklahoma City, OK, for Bernard G. Ille and Horace G. Rhodes.

J. Clay Christensen and Joel W. Harman, Day, Edwards, Federman, Propester and Christensen, P.C., Oklahoma City, OK, for the Unsecured Creditors-Committee.

*MEMORANDUM OF LAW ON DEBTOR'S MOTION FOR THE UNITED STATES SECRETARY OF HEALTH AND HUMAN SERVICES TO SHOW CAUSE WHY HER ACTIONS DO NOT VIOLATE THE AUTOMATIC STAY*

RICHARD L. BOHANON, Bankruptcy Judge.

The Chapter 11 debtor, Healthback, L.L.C., has moved for an order determining that the actions of the Secretary of the Department of Health and Human Services[1] violate the automatic stay of 11 U.S.C. § 362 and has requested that the Secretary be held in contempt.[2] The Secretary has responded and argues, essentially, that, pursuant to the Medicare Act, the bankruptcy court does not have jurisdiction to determine the issue; that the Medicare Act provides an exclusive process for administrative review of payment claims, and, in any event, her actions do not violate the stay for she seeks recoupment, not a setoff.

*LEGAL FRAMEWORK*

The debtor is a home health care agency pursuant to 42 U.S.C. § 1395b and 1395d and is in the business of providing home health services to the elderly in their homes. Its costs are reimbursed by the Secretary as a part of the federal Medicare program established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*

Through her administrative regulations the Secretary has put in place a payment scheme which provides that: (1) providers, such as the debtor, are paid on an interim basis before an audit is conducted at the end of the cost year to determine the precise amounts owed and that, (2) over and under payments are corrected through ongoing adjustments to the amounts owed the provider in future Medicare reimbursement. The interim payments are made during the 12 month year, based on the provider's projections for the entire year which may then be adjusted depending on the audits. 42 C.F.R. § 413.64(b),(e).

Medicare requires the Secretary to recompute the interim payment rate no less than four times a year and she may make adjustments to the rate based on various factors. 42 C.F.R. § 413.64(e),(f). If inter-

---

1. The Secretary of the Department of Health and Human Services has been stipulated to be the real party in interest, even though the payments in question have been issued and withheld by an intermediary provider, Palmetto Government Benefit Administrators, which are the named respondents.

2. While the relief sought by the debtor could be deemed to be for declaratory relief or to recover money, it has not brought a complaint as required by Fed. R. Bankr.P. 7001. The Secretary has not objected to the procedure and the issue is dealt with as a contested matter under Fed. R. Bankr.P. 9014.

im payments made during a fiscal year are determined to be higher than the provider's current reasonable costs, the Secretary may adjust the interim rate in keeping with the provider's costs. As part of the adjustment process, overpayments are recovered by a downward adjustment of current payments. 42 U.S.C. § 1395(g)a; 42 C.F.R. § 413.64(f). The idea is to make these adjustments during the year to approximate the actual reimbursement determined at the final settlement. 42 C.F.R. § 413.64(e),(f).

Because the interim payments are made on the basis of estimated costs, the actual reimbursable costs cannot be fixed until the final cost report is presented, reviewed and finally settled. Thus, a retroactive adjustment is made after the cost report is completed to make the actual and interim payments balance. This cost report is completed following the end of each cost year.

According to the Secretary there are two grounds for the recovery of any overpayments determined by the interim and retroactive adjustments. The first treats the recovery as part of the ongoing stream of payments made during the year. In these cases current payments are adjusted so that no overpayment will exist at the end of the cost year. 42 C.F.R. § 413.64(f).

The second ground for recovery of overpayments relates to providers who are debtors in bankruptcy. In that case the regulation requires that payments to the debtor-provider "will be adjusted by the [Secretary], notwithstanding any other regulation or program instruction regarding the timing and manner of such adjustment, to a level necessary to insure that no overpayment to the provider is made." 42 C.F.R. § 413.64(I).

The Medicare scheme then provides a procedure for review of reimbursement issues which includes various provisions for appeal and review.

### FACTUAL BACKGROUND

The Secretary has now withheld funds from current payments owed the debtor to apply against what she calculates to be overpayments made to it in the past. One sum is for overpayment occurring before the peti-tion was filed and the other is for an overpayment which occurred post-petition. One is denominated an interim adjustment and other a retroactive adjustment.

The debtor, apparently and without citation to pertinent authority, wants the Secretary to "release" the payments already withheld and to prevent the Secretary from withholding any more payments. The only justification offered by the debtor for this request is that these funds are needed for the debtor to continue in operation. The debtor argues that without these funds it will not be able to remain in existence, never mind any attempt at reorganization.

■ Additionally, the debtor's request is procedurally infirm. In its pleadings, the debtor does not request that these funds be released by the Secretary. However, at the hearing, this issue was raised orally by the debtor. Moreover, it seems that for such a request, the proper procedural vehicle is a complaint commencing an adversary proceeding, as opposed to a motion commencing a contested matter. However, given the emergency nature of the debtor's request and the lack of opposition by the Secretary, the matter will proceed as a contested matter, pursuant to Fed. R. Bankr.P. 9014.

The lack of factual and evidentiary material inhibits this court's ability to fully address the issues raised in this motion and at the hearing. Therefore, this decision will make rulings of law based upon the arguments and authorities presented by the debtor and the respondent but will withhold granting any relief until appropriate evidence is submitted in support of any such requests for relief the debtor or respondent may wish to make.

### ISSUES

The legal issues are: (1) does the bankruptcy court have jurisdiction to hear this matter and (2) do the actions of the Department of Health and Human Services, making adjustments to reimbursements to the debtor, constitute a bankruptcy claim such that they are equitable recoupment or set-off and do such actions violate the automatic stay?

*ANALYSIS*

## JURISDICTION

The Secretary, in her response to the debtor's motion, claims that the bankruptcy courts do not have jurisdiction over any matter concerning the Medicare system, pursuant to 42 U.S.C. § 405(h), until the administrative procedures mandated by 42 U.S.C. § 405(g) have been exhausted. Resolution of this issue is essential to the consideration of the remaining issues raised by the debtor and the Secretary. If the bankruptcy courts do not have jurisdiction to hear this matter, than all the other matters raised, with regard to Medicare, are, at least temporarily, beyond the authority of this court.

First, 28 U.S.C. § 1334(a) provides exclusive jurisdiction over all cases under Title 11 to the district courts, which then may refer the cases to the bankruptcy courts. Further, 28 U.S.C. § 1334(e) provides exclusive jurisdiction over all of the property of the debtor, wherever located, and of the estate. Thus, Congress has provided for exclusive jurisdiction over all bankruptcy cases.

In contrast, the Secretary is arguing that exclusive jurisdiction over all Medicare issues falls, first, under the administrative jurisdiction of the Department of Health and Human Services, pursuant to 42 U.S.C. § 405(g) and (h). 42 U.S.C. § 405(h) states, in pertinent part:

. . . . .

No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(g) allows judicial review only after a final decision of the Commissioner of Social Security. Further, such an application for judicial review must be filed in district court within sixty days of the final decision. 42 U.S.C. § 1395ii incorporates 42 U.S.C. § 405(h) into the Medicare statute and 42 U.S.C. § 1395cc(h)(1) incorporates 42 U.S.C. § 405(g) into the Medicare Act.

The Secretary claims that this court cannot exercise any jurisdiction over the issues of the withholding or reimbursing of Medicare payments until the debtor exhausts its administrative remedies under 42 U.S.C. § 405. Thus, the jurisdictional issue facing this court is resolution of a possible conflict between the exclusive grant of bankruptcy jurisdiction under 28 U.S.C. § 1334 and what is, according to the Secretary, the excluding and exclusive grant of administrative jurisdiction under 42 U.S.C. § 405. There are several perspectives from which to address this dilemma.

▮ First, the specific language of 42 U.S.C. § 405(h) does not state that jurisdiction under 28 U.S.C. § 1334 is subordinate to 42 U.S.C. § 405. It is a primary rule of construction to look to the plain language of the statute. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).[3] Thus, under the plain language rule, 28 U.S.C. § 1334 grants bankruptcy jurisdiction over matters involving Medicare.

▮ Second, the Secretary characterizes the exercise of jurisdiction by the bankruptcy courts as a "judicial review" of the actions of the Department of Health and Human Services. This is a misapplication of the term "judicial review". Judicial review of an administrative decision is an adjudicatory process to directly determine the legality of a decision. Indeed the purposes of judicial review of an administrative decision are: (1) to determine the authority of the agency, (2) to determine compliance by the agency with procedural requirements, and (3) to ensure that the agency action is not arbitrary, capricious, or an abuse of process. Essentially, judicial review of an administrative decision is to ensure the fairness and legality of the

---

3. For a more extensive discussion of this principle, see *In re Horwitz*, 167 B.R. 237 (Bankr.W.D.Okla.1994)(noting that it is the court's responsibility to execute absolute Congressional enactments as they are stated. If the result is "unwelcome" then Congress is free to alter the law.)

decision. 2 Am.Jur.2d *Administrative Law* § 417 (1994).

■ In this matter, adjudication by the bankruptcy court over property belonging to the estate is not directly concerned with any administrative decision, itself, nor is it concerned with examining the fairness and legality of the decision. Rather, the purpose of a bankruptcy case is to exercise jurisdiction over the property of the estate to ensure that all creditors are treated equally within the scope of the Bankruptcy Code.

■ It is true that exercise of bankruptcy jurisdiction over property of the estate, which would include any payments owed to the debtor by the Department of Health and Human Services, might conflict with a decision of the Secretary. But this conflict does not, as the Secretary argues, constitute illegal interference in the administrative process amounting to judicial review. The bankruptcy court is not passing judgment upon the fairness or legality of any decision of the Secretary. Rather, the purpose of bankruptcy is to administer property of the estate.[4] Any effect on the administrative decisions is indirect and ancillary. Thus, a bankruptcy adjudication over property is not a "judicial review" of any administrative decision within the meaning of the statute.[5]

This posture is further highlighted by the fact that this proceeding is in the bankruptcy court. If the debtor wished to seek judicial review of the decision, it would have filed in the district court. Indeed, there is no indication that the debtor filed this bankruptcy case merely to circumvent the administrative requirements of 42 U.S.C. § 405 to obtain "judicial review" of the withholding.

■ Third, the Secretary raises the issue of "primary jurisdiction", arguing that be-cause 42 U.S.C. § 405 vests primary jurisdiction in the Department of Health and Human Services, the bankruptcy court does not have authority to pass on this issue. The doctrine of primary jurisdiction, generally, requires that where a matter has been placed under the authority and special competence of an administrative body, the courts should suspend judicial process until that administrative body has had the opportunity to address the issue in question. *See, e.g., United States v. Western Pacific Railway Company*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). *See also Wilson Foods Corporation v. United Foods and Commercial Workers International Union, AFL–CIO, (In re Wilson Foods)*, 31 B.R. 269, 271 (Bankr.W.D.Okla.1983)(holding that the bankruptcy court should grant a reasonable opportunity for an administrative agency to act).

■ The doctrine of primary jurisdiction has been addressed by the bankruptcy courts in Oklahoma. *See Sunbelt Freight, Inc. v. Advanced Precision Fabricators, Inc. (In re Sunbelt Freight)*, 162 B.R. 878 (Bankr. N.D.Okla.1994). This decision noted that, inter alia, the doctrine of primary jurisdiction may be invoked when the administrative agency is better equipped for " 'ascertaining and interpreting the circumstances underlying the legal issues . . . .' " *Id.* at 882 (quoting *United States v. Western Pacific Railroad Company*, 352 U.S. 59, 63–65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). *See also Marshall v. El Paso Natural Gas Company*, 874 F.2d 1373, 1377 (10th Cir.1989); *Williams Pipe Line Company v. Empire Gas Corporation*, 76 F.3d 1491, 1496–97 (10th Cir.1996). In this matter, there are no facts or circumstances to ascertain as they are not in dis-

---

**4.** Any debts owing to the estate, such as reimbursements due from the Department of Health and Human Services, would be property of the estate, regardless of the payment procedures employed by the Department concerning such debts.

**5.** The United States expends considerable effort arguing that the doctrine of the exhaustion of administrative remedies precludes jurisdiction of the bankruptcy courts in this matter. However, this argument is specious, as the foundation of this argument depends upon whether the party is seeking judicial review of the substantive Medicare law.

As previously explained, the United States is erroneously attempting to characterize a bankruptcy proceeding as "judicial review". As this characterization is not accurate and as a bankruptcy proceeding is not making a substantive ruling on Medicare law, the doctrine of exhaustion of administrative remedies would not be applicable.

pute.[6] Further, the bankruptcy court is not attempting to interpret any substantive legal issue concerning the Department of Health and Human Services statutes. Further, this court, by the exercise of its bankruptcy jurisdiction, will not be required to employ any significant degree of expertise on substantive Medicare issues.[7]

■ Moreover, the bankruptcy court in the Northern District of Oklahoma noted that the doctrine of primary jurisdiction is not to be called into operation at the whim of the pleader. *Sunbelt Freight, Inc. v. Advanced Precision Fabricators, Inc. (In re Sunbelt Freight)*, 162 B.R. 878, 882 (Bankr. N.D.Okla.1994). The doctrine should only be invoked if the benefits of obtaining the agency's aid would outweigh the need to resolve the litigation expeditiously. *Id.* at 882 (quoting *Gulf States Utilities Company v. Alabama Power Company*, 824 F.2d 1465, 1473 (5th Cir.1987) quoted with approval in *Mical Communications, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038 (10th Cir.1993)). *See also Marshall v. El Paso Natural Gas Company*, 874 F.2d 1373, 1377 (10th Cir.1989); *Williams Pipe Line Company v. Empire Gas Corporation*, 76 F.3d 1491, 1496–97 (10th Cir.1996). In this matter, the Department of Health and Human Services could add little in the way of expertise in resolving this matter, as the situation does not involve substantive Medicare law, but, rather, procedural matters.

■ Further, there would be little benefit in waiting until the end of the fiscal year for the Department of Health and Human Services to hold an administrative hearing on this matter. Indeed, the balance of any benefit in waiting would be more than outweighed by the harm imposed by delaying this bankruptcy proceeding until the Department of Health and Human Services decided to have a hearing on the matter.[8]

In considering any equitable balance of harms, the plight of the patients and employees of the debtor must be considered. The debtor employs approximately 200 people. Further, the debtor provides home health care to numerous sick, infirm, and elderly people. If the debtor were required to exhaust its administrative remedies, as the Secretary wishes, there is little doubt that the debtor would soon cease to exist, well before the administrative process would be completed.[9] The harmful effect on the debtor's employees and clients would be significant. In any exercise of discretion and balancing of harm, there is little doubt that the debtor's argument is more persuasive.

6. Indeed, there is a remarkable dearth of facts in this matter. At the hearing, no evidence was introduced. Rather, both parties relied upon the assertions of counsel, which do not constitute evidence.

7. The primary factual issues to be examined by this court appear to consist of matters of accounting with regard to the reimbursement scheme of Medicare. As generally accepted accounting principles are not unique to Medicare and are applicable to almost all financial enterprises, Medicare's administrative expertise is not needed as basic accounting is not beyond the competence of this court.

8. The parties all acknowledge that, as of this moment, there is no administrative remedy available to the debtor. Any administrative remedies would not be available until the end of the fiscal year, which apparently ends on October 31, 1998.

This fact even further undermines the argument of the United States that the administrative remedies must be exhausted as, at this time, there are no administrative remedies.

In a previous decision, this court has acknowledged the appropriateness of administrative remedies. However, where the administrative agency will not act in a reasonable time, the administrative remedy should not be required to be exhausted. *See Wilson Foods Corporation v. United Foods and Commercial Workers International Union, AFL–CIO, (In re Wilson Foods)*, 31 B.R. 269, 271 (Bankr.W.D.Okla.1983). In this matter, where there is no timely administrative remedy available to the debtor, this court will not require the debtor to, literally, commit suicide to adhere to this rule.

9. The Supreme Court has acknowledged that there are situations where the requirement of exhausting administrative remedies should not be required, such as where the exhaustion would be futile. *Heckler v. Ringer*, 466 U.S. 602, 618, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1983). This is just such a situation. If the debtor were required to pursue the administrative remedies, as demanded by the Secretary, then the debtor would likely cease to exist. This is, clearly, not only a futile pursuit, but it also defeats the purpose of a Chapter 11 bankruptcy which seeks to rehabilitate the debtor.

A number of decisions have indicated that the doctrine of primary jurisdiction should not be invoked if unnecessary delay and expense will result. *Id.* Thus, this court, in its discretion declines to invoke the doctrine of primary jurisdiction as there are no issues of substantive Medicare law to be decided and the delay in this bankruptcy case would be without substantial justification and prejudicial to the debtors and other interested parties.

 Fourth, the exercise of jurisdiction over this issue might cause administrative inconvenience to the Department of Health and Human Services. As a matter of due process, under Title 11 debtors and creditors have certain statutory rights. However, administrative inconvenience is not grounds for denying debtors their statutory rights, as a matter of due process. *See Frontiero v. Richardson,* 411 U.S. 677, 690, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Schlesinger v. Ballard,* 419 U.S. 498, 506–07, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975). Thus, even though the exercise of this court's jurisdiction might cause administrative difficulties for the Department of Health and Human Services, these difficulties are not sufficient grounds for denying jurisdiction.[10]

Finally, this court will address one other argument of the Secretary. The Secretary asserts that 42 U.S.C. § 405(h), in its jurisdictional limitation, encompasses and includes 28 U.S.C. § 1334, even though 42 U.S.C. § 405(h) only specifies 28 U.S.C. §§ 1331 and 1346. In support, the Secretary cites to several bankruptcy court decisions which apparently hold that the omission of 28 U.S.C. § 1334 from 42 U.S.C. § 405(h) in its jurisdictional limitation, was inadvertent. *In re St. Johns Home Health Agency, Inc.,* 173 B.R. 238, 244 (Bankr.S.D.Fla.1994); *In re Upsher Laboratories, Inc.,* 135 B.R. 117, 119–20 (Bankr.W.D.Mo.1991); *Sullivan v. Hiser (In re St. Mary Hospital),* 123 B.R. 14, 17 (E.D.Pa.1991).

This position is best summarized in the *St. Mary Hospital* decision, which is relied on by the later two decisions. *Sullivan v. Hiser (In re St. Mary Hospital),* 123 B.R. 14, 17 (Bankr.E.D.Pa.1991). In that decision, the court acknowledged that when 42 U.S.C. § 405(h) was first enacted, it barred all actions brought under 28 U.S.C. § 41, to include bankruptcy proceedings. However, 28 U.S.C. § 41 was later divided into the following sections: 28 U.S.C. §§ 1331–1348, 1350–1357, 1359, 1397, 2351, 2401, and 42 U.S.C. § 2401. Then, 42 U.S.C. § 405(h) was rewritten, but it only specified 28 U.S.C. §§ 1331 and 1346 as being subject to the jurisdictional limit—28 U.S.C. § 1334, granting bankruptcy jurisdiction, was expressly omitted from the revision.

The basis for this decision in holding that 28 U.S.C. § 1334 was inadvertently omitted from the revision of 42 U.S.C. § 405(h) was a statement by Congress in the public law that the changes were not to be construed as affecting any right, liability, status, or interpretation which existed under the previous law. *Id.* at 17 (quoting Pub.L. No. 98–369, 98 Stat. 1162, § 2664(b)). This section of the public law states:

(b) Except to the extent otherwise specifically provided in this subtitle, the amendments made by section 2663 shall be effective on the date of enactment of this Act; but none of such amendments shall be construed as changing or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date.

The actual cite for the quote is 98 Stat. 1171–72, § 2664(b). This quote was accurately interpreted to refer to any changes or affects to the *substantive* law. *Id.* Unfortunately, the *St. Mary Hospital* decision, and all of the decisions which have subsequently relied on it, have made a fundamental error in dealing with "substantive" law.

---

**10.** Under 11 U.S.C. § 105(a) the court has the power to issue any order process or judgment necessary or appropriate to execute the provisions of Title 11. In almost all bankruptcy cases, the creditors and parties are inconvenienced to

some degree. This court perceives no reason why the Department of Health and Human Services should receive special consideration in this context.

■ The substantive law does not include jurisdictional considerations. Jurisdiction is a question of procedural law.

> **Substantive law.** That part of law which creates, defines, and regulates rights and duties of parties, as opposed to "adjective, procedural, or remedial law," which prescribes method of enforcing the rights or obtaining redress for their invasion. Allen v. Fisher, 118 Ariz. 95, 574 P.2d 1314, 1315. The basic law of rights and duties (contract law, criminal law, tort law, law of wills, etc.) as opposed to *procedural law* (law of pleading, law of evidence, *law of jurisdiction,* etc.).

Blacks Law Dictionary 1429 (6th ed.1990)(emphasis added). This general definition is supported in both federal and state court decisions.

In considering an analogous provision, the United States Supreme Court has stated:

> The statute was remedial, in the purest sense of the term, and neither enlarged nor impaired respondent's substantive rights or obligations. *It did nothing more than to provide* petitioner with a California *forum to enforce* whatever substantive rights she might have against respondent.

*McGee v. International Life Insurance Company,* 355 U.S. 220, 224, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (emphasis added). Thus, it is apparent that, in a federal context, the question of jurisdiction (i.e., which forum is appropriate), a law is procedural and not substantive.[11]

■ Further, numerous state courts have defined substantive law as those statutes which create, define, and regulate rights, while procedural law is defined as those statutes which provide a method of enforcing substantive rights or obtaining redress. *See, e.g., Ware v. City of Anchorage,* 439 P.2d 793,

794–95 (Alaska 1968); *Romano v. B.B. Greenberg Company,* 108 R.I. 132, 273 A.2d 315, 317 (Rhode Island 1971); *State of Arizona v. Birmingham,* 96 Ariz. 109, 392 P.2d 775, 776 (Arizona 1964); *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 377–78 (Missouri 1937); *Stansbury v. HEP, Inc.,* 248 Neb. 706, 539 N.W.2d 28, 34 (Neb.1995). Considering this definition, it is evident that the question of which forum is appropriate for a matter to be heard (i.e., jurisdiction) is procedural, as the proper choice of forum does not provide any substantive rights. Indeed, Some of these decisions specifically state that questions of jurisdiction are matters of procedural law. *Frederick v. District Court of Fifth Judicial District In and For County of Big Horn,* 399 P.2d 583, 585 (Wyo. 1965). *See also Ogdon v. Gianakos,* 415 Ill. 591, 114 N.E.2d 686, 689 (Ill.1953); *State v. Williams,* 216 La. 419, 43 So.2d 780, 781 (La.1949).

■ As the statement of Congress in the public law concerning the changes only addressed substantive law and as 42 U.S.C. § 405(h), in its limitation on jurisdiction, concerns procedural law, *it is obvious that the statement of Congress in the public law did not apply to the changes in 42 U.S.C. § 405 which had to do with procedural law.* Thus, the omission of 28 U.S.C. § 1334, which is procedural in nature, from 42 U.S.C. § 405(h) cannot be attributed to an oversight. Therefore, 42 U.S.C. § 405(h) does not limit bankruptcy jurisdiction under 28 U.S.C. § 1334 in this matter.

■ Indeed, using a plain reading of the statute, it is evident that the bankruptcy courts are not prohibited from exercising jurisdiction over matters which concern Medicare.[12] In any event, this court is in-

---

11. It should be noted that the substantive-procedural distinction rejected by the Supreme Court in *Heckler v. Ringer,* 466 U.S. 602, 612, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), as ground for permitting jurisdiction, is different than the substantive-procedural distinction raised in this decision.

In *Heckler,* the procedural elements rejected by the Supreme Court referred to the administrative procedures within the Department of Health and Human Services, not procedural law as it concerns jurisdiction.

12. It should be noted that the quote in the public law actually uses the phrase "specifically provided". This strongly indicates that the "inadvertent omission" justification offered by the *St. Mary Hospital* court is questionable.

It is even more instructive to realize that the quote, itself, does *not* state that jurisdictional considerations are not changed. The quote only specifies substantive considerations (e.g., rights, liabilities, etc.). 98 Stat. 1171–72, § 2664(b).

clined to accept · the Supreme Court's oft stated maxim to employ the plain language of a statute and to not rely on legislative history. *See, e.g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Thus, the argument of the Secretary, that 28 U.S.C. § 1334 is encompassed within the jurisdictional limit imposed by 42 U.S.C. § 405(h), is without merit and rejected.

Furthermore, the Secretary argues that because this matter arises under the Medicare Act, this court does not have jurisdiction to hear the matter pursuant to 42 U.S.C. § 405(h). *Heckler v. Ringer*, 466 U.S. 602, 622–24, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). However, 42 U.S.C. § 405(h) has several elements which must be satisfied before the jurisdictional bar is triggered: (1) the action must be brought under 28 U.S.C. § 1331 or 1346, (2) the party must be seeking judicial review, and (3) the claim must arise under the Medicare Act. As previously demonstrated, this matter is not brought under 28 U.S.C. §§ 1331 or 1346 and the debtor is not seeking judicial review. Thus, even if the matter does arise under the Medicare Act, the remaining elements have not been met.[13] Therefore, the jurisdictional bar has not been triggered.

Further, there are additional decisions which hold that 42 U.S.C. § 405 does not defeat bankruptcy jurisdiction. *See First American Health Care of Georgia, Inc. v. United States Department of Health and Human Services (In re First American Health Care of Georgia, Inc. .)*, 208 B.R. 985 (Bankr.S.D.Ga.1996); *Gingold v. United States Department of Health and Human Services*, 80 B.R. 555 (Bankr.N.D.Ga.1987);

*Hospital Staffing Services of Tennessee, Inc. v. Donna Shalala, Secretary of United States Department of Health and Human Services*, Case No. 98–21899–BKC–RBR, ·Adversary Case No. 98–2151–BKC–RBR–A (Bankr.S.D.Fla.1998)(unpublished decision). *See also Town & Country Nursing Home Services, Inc. v. Blue Cross of California (In re Town & Country Nursing Home Services, Inc.)*, 112 B.R. 329 (9th Cir. BAP 1990)(holding that bankruptcy jurisdiction over Medicare issues does not depend upon exhaustion of administrative remedies); *Cunningham v. Commissioner of I.R.S.*, 165 B.R. 599 (N.D.Tex.1993)(rejecting *Sullivan v. Hiser (In re St. Mary Hospital)*, 123 B.R. 14 (Bankr.E.D.Pa.1991)); *V.N.A. of Greater Tift County Inc. v. Heckler*, 711 F.2d 1020, 1031–33 (11th Cir.1983)(holding that in some circumstances the requirement of exhaustion of administrative remedies is not appropriate).

■ In closing this discussion on jurisdiction, it is noted that, as a matter of express grant, Congress provided exclusive jurisdiction to the bankruptcy courts, through the district courts, over all matters concerning Title 11. Inferential arguments, such as those proposed by the Secretary, are insufficient to defeat it.

As an aside, at the hearing, the Secretary raised the specter. of the entire Medicare system coming to a screeching halt if this court was to exercise jurisdiction in this matter. It seems highly improbable to this court that every home health care provider will declare bankruptcy for the purpose of avoiding the Medicare administrative requirements in response to this court exercising jurisdiction in this case.

Moreover, the Supreme Court has expressly stated that, absent a specific Congressional statement to the contrary, where statutes appear to be in conflict, they should be interpreted in such a way as to give both statutes effect. *See Ruckelshaus v. Monsanto Company*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). In this matter, this interpretation provides effect to both the Bankruptcy Code and the Medicare Act. This application is an accord with the decision in a similar matter by the Third Circuit. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1082 (3rd Cir.1992).

---

**13.** Although the issue of whether the instant matter is a claim under Medicare is not reached in this decision, the Secretary's implication that it is a claim is rejected. The debtor is not seeking to challenge any decision of the Secretary as to the amount of any reimbursement. Rather, the debtor is merely seeking to forestall any accounting of the amounts due and owing between the debtor and the Department. Of course, such a delay would result in the temporary prevention of the Department from withholding reimbursements. To this court, this does not seem to amount to a claim under the Medicare Act but, rather, an execution of the lawful duties of the bankruptcy court. *See* 11 U.S.C. § 105(a).

On the other hand, if the bankruptcy court were to suspend the proceedings before it and permit the Department of Health and Human Services to exercise its administrative proceedings, then the entire bankruptcy scheme would be disrupted. This bankruptcy case would have to wait until the end of the fiscal year, apparently on October 31, 1998, for the administrative remedy to even be available. Then the cost report would have to be prepared by the Department, which would require a certain amount of time. Then the administrative remedy would have to be scheduled for a hearing. Then any required various reviews and appeals within the administrative structure would apparently have to be exhausted. Given the backlog in the administrative agencies of the United States, it would not be inconceivable that it would be at least a year or more before the Department of Health and Human Services was satisfied that the debtor had exhausted its administrative remedies. Only then would this bankruptcy case be permitted to proceed. Such a result would be unacceptable as the purpose of the bankruptcy statutes, to provide a debtor breathing room to attempt an effective reorganization, would be completely defeated.

Therefore, for all the reasons explained above, both additionally and in the alternative, one is compelled to conclude that the bankruptcy court has jurisdiction over this matter.[14]

### SETOFF OR RECOUPMENT

The Secretary argues that actions taken to recover overpayments pursuant to the Medicare Act are not claims under the Bankruptcy Code. 11 U.S.C. § 101(5) defines a bankruptcy claim as either a right to payment or a right to an equitable remedy for a breach of performance. Thus, it clearly appears that the amounts currently being withheld from the debtor for the current reimbursements, by themselves and without regard to any past overpayments, are within the definition of a claim. However, the Secretary

argues that these withholdings are done pursuant to the doctrine of equitable recoupment and, thus, are removed from the purview of the corresponding bankruptcy doctrine of setoff, which would otherwise permit the debtor to recover the sums in dispute.

Equitable recoupment permits one party to a transaction to withhold funds due the other party, *as long as both debts arise from the same transaction.* Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.), 82 F.3d 956, 958 (10th Cir.1996). Setoff, in contrast, allows adjustments of mutual debts *arising from separate transactions.* Id. 11 U.S.C. § 553 allows setoff to occur but subject to the automatic stay under 11 U.S.C. § 362. The Bankruptcy Code does not address recoupment but there are a number of cases which indicate that recoupment is not subject to the automatic stay. *See, e.g., State of Oregon v. Harmon (In re Harmon),* 188 B.R. 421, 425 (9th Cir. BAP 1995) (holding that because equitable recoupment only reduces a debt and does not constitute an independent basis for a debt, it is not a claim in bankruptcy). However, there are other decisions which hold that equitable recoupment does constitute a claim in bankruptcy. *Baker v. United States Department of Labor,* 100 B.R. 80 (M.D.Fla.1989); *Kings Terrace Nursing Home and Health Related Facility v. New York State Department of Social Services (In re Kings Terrace Nursing Home and Health Related Facility),* 184 B.R. 200 (S.D.N.Y.1995).

For recoupment to apply, the debts must have arisen from the same transaction. However, it is a recognized principle of law that just because the debts arose from the same contract, does not mean that they arose from the same transaction. *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.),* 82 F.3d 956, 960 (10th Cir.1996); *Ashland Petroleum Company v. Appel (In re B & L Oil Company),* 782 F.2d 155, 158 (10th Cir.1986). For recoupment to apply, the claims must be "so closely intertwined that

---

**14.** The Court of Appeals for the Third Circuit has also rejected similar arguments by the Secretary of the Department of Health and Human Services concerning the issue of whether the bankruptcy courts have jurisdiction over Medicare

issues involving reimbursement. *See University Medical Center v. Sullivan (In re University Medical Center),* 973 F.2d 1065, 1072–74 (3rd Cir. 1992).

allowing the debtor to escape its obligation would be inequitable notwithstanding the Bankruptcy Code's tenet that all unsecured creditors share equally in the debtor's estate." *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 960 (10th Cir.1996) (citing *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1081 (3rd Cir.1992)).

First, the debtor is not, at this juncture, seeking to discharge the overpayments made by the Department of Health and Human Services. Indeed, it seems that the debtor is only seeking to *forestall* accounting for these alleged overpayments and for "breathing room" to effect reorganization.[15] Indeed, the debtor, at the hearing, merely asked that the current withholdings be released to facilitate survival and rehabilitation of the debtor as a business entity, which is the purpose of a Chapter 11 case. Only later in this case would it be proper for this court to undertake any determination of the dischargeability of these overpayments to the debtor from the Department of Health and Human Services, as "debts". Further, at that time, it would be appropriate to determine what overpayments were due the Department of Health and Human Services. Thus, it would seem that the Secretary's argument, that the debtor is not entitled to any reimbursement for current accounts because of past overpayments, is premature. Indeed, the debtor is only asking for payments on current accounts.[16] Thus, it appears that, under this ground, the debtor's position is well taken.

As previously explained, the doctrine of recoupment is an equitable doctrine. But equity goes both ways. In this matter, the harm to both parties must be balanced. If the Secretary is granted her request and the debtor is ordered to exhaust its administrative remedies in accordance with the Medicare Act, then there is little doubt that the debtor will cease to exist. Thus, the harm to the debtor, its 200 employees, patients, and creditors will be the highest degree of harm possible. On the other hand, if the debtor is granted its remedy, the harm to the Department of Health and Human Services will only be a delay in the accounting and recovery of any overpayments. The harm to the debtor clearly and unequivocally outweighs any inconvenience to the Department of Health and Human Services.

Second is the issue of whether equitable recoupment should apply to this matter. This issue turns upon what is, in this matter, defined as the "same transaction". *See Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 960–61 (10th Cir. 1996). Further, in *Peterson*, the court recognized that determining whether several transactions are a single transaction turns upon whether they are "integrated".[17]

The Secretary urges adoption of the reasoning of the District of Columbia Circuit in *United States v. Consumer Health Services of America, Inc.*, 108 F.3d 390 (D.C.Cir.1997) (holding that the "same transaction" requirement for equitable recoupment purposes extends through pre- and post-petition claims in Medicare reimbursement cases such that the automatic stay would not apply). In contrast, the Third Circuit took the position that the annual audit conducted by the Department of Health and Human Services was

---

**15.** A decision by the Court of Appeals of the Third Circuit, in similar circumstances to this matter, holding that withholding by the Department of Health and Human Services was improper, also acknowledged that the Department was not being prevented from ever recovering the alleged overpayments, only that the Department had to respect the automatic stay. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1084–85 (1992).

**16.** This court finds one portion of the Secretary's brief illuminating. The Secretary claims that the purpose of the Medicare payment methodology was to ensure "a prompt and steady cash flow" to providers and to ensure that providers "need

not await the outcome of a lengthy audit process or lengthy claims review before being paid by the government." Secretary's Brief, pp. 5–6. Yet, what the Secretary apparently now wants this court to do is to place its imprimatur on an idea which would contravene this stated purpose and likely result in the premature destruction of the debtor as a viable business entity.

**17.** Thus, the *Peterson* decision qualified the previous holding of the Tenth Circuit Court of Appeals in *B & L Oil*, which had recognized the concept of a single transaction in this context in this circuit. *Ashland Petroleum Company v. Appel (In re B & L Oil Company)*, 782 F.2d 155 (10th Cir.1986).

the defining standard for determining separate transactions for the purposes of equitable recoupment in Medicare cases. *See University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065 (3rd Cir.1992). At the opposing end of the spectrum are those decisions which hold that equitable recoupment does constitute a claim in bankruptcy. *Baker v. United States Department of Labor*, 100 B.R. 80 (M.D.Fla. 1989); *Kings Terrace Nursing Home and Health Related Facility v. New York State Department of Social Services (In re Kings Terrace Nursing Home and Health Related Facility)*, 184 B.R. 200 (S.D.N.Y.1995).

Thus, what remains is to determine whether an, essentially, open-ended application of the definition of "single integrated transaction" should apply to the Medicare reimbursement scheme, pursuant to the District of Columbia Circuit, or if a discrete division of transactions can be applied to the Medicare scheme, as presented by the Third Circuit. Further, if the Third Circuit rationale is selected, what should the standard be for determining the boundaries separating the transactions?

The Third Circuit decision appears to offer the better rationale. There are a number of reasons which support this position.

First, the Secretary's argument, that the continuous reimbursement scheme is sufficient justification for holding that the entire series of reimbursements to the debtor is a single integrated transaction, is rejected. Each time the debtor provides services to a Medicare qualified patient, it is entitled to receive reimbursement from the Department of Health and Human Services. Thus, as a matter of logic, each provision of services by the debtor to a patient is a separate transaction and contract. And it follows that each payment made to the debtor for service to each of the patients is a separate transaction. Thus, it appears that to determine the true nature of the relationship between the debtor and the Department of Health and Human Services, this court must look through the screen of the accounting procedures.

Apparently, the reimbursement contract between the Department of Health and Human Services and the debtor was open-ended in that it was a on-going relationship.[18] Thus, at least on the surface, there appears to be a significant difference between the discrete nature of the services provided by the debtor to the patients and the continuous payments provided by the Department of Health and Human Services to the debtor in reimbursement for these services. But, the "continuous nature" of the contract between the debtor and the Department of Health and Human Services is a manufactured and temporary distinction.

It is manufactured in that, at the end of each cost year, the actual amount due the debtor is calculated and only then are final adjustments made to reflect the actual services rendered by the debtor to the patient. Thus, the actual final adjustments by the Department of Health and Human Services reflect and correspond to each actual separate service provided by the debtor to its patients. Therefore, the alleged continuous nature of the reimbursement contract between the debtor and the Department of Health and Human Services is not only manufactured (i.e., an accounting device created for administrative convenience) but it is also temporary as the adjustments at the end of the cost year are employed to reflect the actual services provided by the debtor to its patients.

What the Secretary is attempting to do is to use this manufactured accounting device in substitution for the substantive nature of the transactions, which are, in reality, separate and distinct. Thus, even though the contract between the Department of Health and Human Services apparently provides for a continuous stream of estimated interim payments, the contract, in fact, consists of a series of separate transactions which are only finally accounted for at the end of each cost year. The accounting and final adjustment

---

**18.** The actual contract between the Department of Health and Human Service and the debtor is not in evidence. However, based upon the pleadings and the representations of the attorneys for the debtor and the respondent, there appears to be no disagreement as to the terms of the contract as presented in this decision.

by the Department of health and Human Services must, necessarily, depend upon the amounts the debtor claims for each separate transaction between it and its patients.

■ Thus, under the standard provided by the Tenth Circuit, it is apparent that, even though there is only one contract between the debtor and the Department of Health and Human Services, this one contract covers a number of separate and discrete transactions and this contract does not constitute a "single integrated transaction". *See Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 961 (10th Cir.1996). These separate transactions are not so inextricably intertwined or integrated that they must be considered one transaction.[19]

The use of a complex method of payment and accounting by the Department of Health and Human Services, which is only balanced at the end of each cost year, is not a sufficient basis to hold that all of these separate transactions are one transaction such that the doctrine of equitable recoupment would be applicable. Thus, it would seem appropriate to hold that each individual transaction between the debtor and each patient should be the guide for determining separate transactions between the debtor and the Department of Health and Human Services, despite the continuous reimbursement scheme.

However, there do exist administrative difficulties in calculating the amounts due and owing for each individual transaction, at least prior to the end of the cost year. But such difficulties would not be impossible or even onerous to overcome. Apparently, in response to, inter alia, these difficulties, the Third Circuit adopted the cost year as the defining boundary for determining separate transactions. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1081 (3rd Cir.1992).[20] Further, the Third Circuit also, essentially, adopted the position that the pre-petition and post-petition periods constituted different transactions, for the purposes of reimbursement withholding and the effectiveness of the automatic stay, despite the cost year. *Id.* at 1081–82.

In support, the Third Circuit acknowledged the Supreme Court's *Bildisco* decision, which held that even though an entity is the same entity after the filing of a bankruptcy petition, it has the ability to act as a different entity which respect to certain situations, such as the assumption or rejection of executory contracts.[21] *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). Thus, the Third Circuit held that the Department of Health and Human Services could not withhold reimbursements, post-petition, for overpayments made, pre-petition, and that such withholding violated the automatic stay. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1084–85 (3rd Cir. 1992).

## CONCLUSION

Thus, the standard of law that this court shall apply will be that enunciated by the Court of Appeals of the Third Circuit. Even though, as a matter of logic and analysis, it appears that the proper ruling could be to hold that each individual transaction between the debtor and its patients should be the guide in determining separate transactions between the debtor and the Department of Health and Human Services, as a practical matter, applying such a holding would be

19. Indeed, if such a position were accepted, it could then be logical to claim that because a party paid for three separate purchases, made at different times, with a single payment, the three purchases constitute a single transaction. Such a position is logically invalid and is rejected.

20. However, the conclusion of the Third Circuit did not completely address the manufactured and temporary nature of the cost year as a "single transaction" and, thus, apparently adopted a middle position between the completely separate transactions argument and the continuous open-ended single transaction argument.

21. In this matter, there is no evidence that the debtor, post-petition, has assumed the pre-petition contract with the Department. Thus, it would appear that, in accordance with *University Medical Center*, the Secretary had no grounds upon which to enforce post-petition withholding against the debtor for, at least, pre-petition over-payments, which would result in a violation of the automatic stay. *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065, 1075–79 (3rd Cir.1992).

time consuming and a waste of judicial resources.

There is no doubt that, as a matter of law, the reimbursement scheme of the Department of Health and Human Services does not constitute a "single, integrated transaction". Setoff, and not recoupment, is the proper doctrine to be applied.

However, in deference to the persuasive authority of the Third Circuit and in recognition of practical considerations, the defining boundary for separate transactions in this matter will be the pre- and post-petition periods, as expressed in *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065 (3rd Cir. 1992). Any post-petition withholdings by the Department of Health and Human Services for pre-petition overpayments will be considered to be violations of the automatic stay.

As neither the debtor nor the respondent has introduced any evidence upon which appropriate relief can be fashioned, the clerk is directed to notice a hearing as soon as possible, given the emergency nature of this situation, so that the debtor and respondent may submit evidence to support their respective requests for relief. In particular, the debtor and the respondent are advised to be prepared to, inter alia, properly address the evidentiary issue of what amount of post-petition reimbursements have been withheld because of pre-petition overpayments, if this amount is not stipulated.