In re the **WOMEN'S TECHNICAL INSTITUTE, INC., Debtor.**

**Bankruptcy No. 95–14033–CJK.**

United States Bankruptcy Court, D. Massachusetts.

April 5, 1996.

78

Susan M. Poswistilo, Assistant U.S. Attorney, for U.S.

John Aquino, Chapter 7 Trustee.

Charles A. Dale, III, Boston, MA, for Debtor.

*MEMORANDUM OF DECISION ON MOTION OF THE UNITED STATES FOR DECLARATION REGARDING RIGHT OF RECOUPMENT OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY OR ADEQUATE PROTECTION*

CAROL J. KENNER, Chief Judge.

The United States of America, on behalf of its Department of Education, has moved for a declaration that it has a valid defense of recoupment to a claim asserted against it by the Debtor or, in the alternative, for relief from the automatic stay to setoff the debt it owes the Debtor against the much larger debt owed by the Debtor to the United States. The motion was filed while this case was still in Chapter 11. The then Debtor–In–Possession filed an opposition to the motion. Shortly thereafter, the Court converted the case to one under Chapter 7. The Chapter 7 Trustee, John Aquino, has adopted and relies upon the opposition filed by the Debtor.[1]

The facts are not in dispute. On September 1, 1991, The Women's Technical Institute, Inc. ("WTI"), and the Secretary of the United States Department of Education en-

---

1. The Official Committee of Unsecured Creditors also filed an opposition, but the Trustee has not adopted its position.

tered into a contract of unlimited duration entitled Program Participation Agreement ("PPA"). Under the PPA, the Secretary permitted WTI to participate in certain federal student financial assistance programs under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1070 *et seq.* In exchange, WTI agreed to abide by all statutory, regulatory, and program requirements for obtaining the federal funds. Among other things, these required WTI to account for all funds it received under the programs and to return to the Secretary all funds for which it did not properly account.

Among the programs in which WTI was eligible to participate was the Federal Pell Grant Program, which operated under a reimbursement system. Under this system, the Department of Education would transfer funds directly to WTI in satisfaction of the approved claims of eligible students. Under Article III of the PPA, the Debtor was responsible for determining the eligibility of students to receive Pell Grant awards.

On June 12, 1995, WTI filed a petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing this case. Shortly thereafter, on June 29, 1995, the Secretary notified WTI that its eligibility to participate in the federal programs was terminated. The Debtor's eligibility was terminated because the Debtor had filed for bankruptcy. 20 U.S.C. § 1088(a)(4)(A). WTI then commenced an adversary proceeding (No. 95–1411) against the Secretary, challenging the termination. On July 14, 1995, WTI and the Secretary resolved the matter by agreement. WTI agreed not to contest the Secretary's termination of WTI's eligibility to participate in the programs; and the Secretary agreed to process WTI's requests for Pell Grant reimbursement in the ordinary course pursuant to 34 CFR § 668.26, which provides for payment or reimbursement of funds committed prior to termination from participation, as long as the former participant continues to teach its students.

In accordance with the agreement, WTI later submitted to the Secretary claims for reimbursement. After review, the Department of Education approved such claims in the total amount of $21,350.00. These claims relate entirely to students whose eligibility for Pell Grant funding was confirmed prior to June 12, 1995. However, the services for which this funding was promised were provided only after the Debtor's bankruptcy filing.

In the meantime, on July 27, 1995, the Secretary notified WTI that he had determined that WTI was liable to the Department of Education in the amount of $834,579 for Pell Grant Program funds, and that WTI was liable to certain lenders in the amount of $2,343,275 for loans advanced under other programs. According to the Secretary, this liability arose from WTI's failure to submit audit reports, as required by federal regulations and the PPA, for the award years of 1991–92, 1992–93, and 1993–94. The Secretary's notification also informed WTI that it could appeal this determination of liability by filing a written appeal within 45 days from the date of receipt of the determination. WTI did not appeal. The Secretary issued his notification of liability without first obtaining relief from the automatic stay, 11 U.S.C. § 362(a).

## ARGUMENTS

The United States now seeks to satisfy its obligation to the estate for $21,350 by crediting against it a portion of the $834,579 it has determined it is owed by the Debtor for Pell Grants that have not been accounted for. It argues that it may do so by means of recoupment—the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the same transaction, typically the same contract[2]—because the reciprocal obligations both arose out of the same transaction or course of interrelated dealings, the contractual relationship defined by the PPA. In the alternative, the United States argues that if the two obligations did not arise from the same transaction, such that recoupment is not available, the Court should determine that setoff is available and should grant the United States relief from the automatic stay to effect that setoff.

The Debtor responds that recoupment is not available for two reasons: first, because

---

**2.** *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir. 1984).

the parties' obligations to each other arose from distinct transactions; and second, because the administrative process pursuant to which the Debtor's liability was determined was conducted in violation of the automatic stay and for that reason is void.[3] The Debtor also argues that setoff is not available because, whereas the United States' claim arose prepetition, the Debtor's claim arose postpetition, and setoff is available only where both obligations arose on the same side of the bankruptcy filing.

## DISCUSSION

### a. Validity of Secretary's Determination of Liability

■ As a preliminary matter, the Court begins with the Debtor's argument that the Secretary's determination of liability is void. The Debtor argues that the administrative process pursuant to which the Debtor's liability was determined was conducted in violation of the automatic stay and for that reason is void. Therefore, the Debtor concludes, there has as yet been no valid determination of an obligation owing from the Debtor to the United States, such that neither setoff nor recoupment is available. The United States has not responded to this argument.

The Debtors argument has two parts: first, that the determination of liability violated the stay and therefore is void; and second, that because the determination is void, no obligation is owing, and recoupment is unavailable. The Court agrees with the first part and rejects the second. The determination of liability occurred postpetition without relief from the automatic stay. It was the product of an administrative proceeding against the Debtor that could have been commenced before the Debtor filed its bankruptcy petition and that was brought to recover a claim against the Debtor that arose before the commencement of the case. As such, it was subject to the automatic stay, 11 U.S.C. § 362(a)(1). Having been conducted without relief from the stay, it was a violation of the stay and therefore is void.[4]

However, the fact that the determination is void does not nullify the underlying liability. The Trustee concedes that having failed to make the requisite accounting, the Debtor is liable for this debt. He believes he can still reduce the liability by·accounting for the program grants and loans—the United States disagrees, arguing that the Debtor's liability is final and irreducible—but he concedes that he has not yet done so and that the burden is on him to make an accounting. Therefore, I find that for purposes of this motion, the Debtor's obligation is sufficiently established to permit recoupment or setoff (provided they are otherwise available).

### b. Recoupment

■ The United States argues that recoupment ·is available because its obligation to the Debtor and the Debtor's obligation to it arose out of the same transaction or course of interrelated dealings: the contractual relationship defined by the PPA. The Trustee disagrees, arguing that the obligations arose out of distinct transactions: the United States' claim arose out of the Debtor's failure to submit an accounting, and the Debtor's claim arose out of a request for reimbursement; and the claims relate to different time periods.

■ Recoupment is the satisfaction of an obligation by the crediting against it of a reciprocal obligation arising from the same transaction, typically the same contract. *United Structures of America, Inc. v. G.R.G. Engineering, S.E.,* 9 F.3d 996, 998 (1st Cir. 1993); *In re University Medical Center,* 973 F.2d 1065, 1080 (3rd Cir.1992); *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984); *Matter of Holford,* 896 F.2d 176, 178 (5th Cir.1990); *In re Midwest Service and Supply,* 44 B.R. 262, 262–266 (D.Utah 1983); *In re Mohawk Industries, Inc.,* 82 B.R. 174, 176 (Bankr.D.Mass.1987); and *In re Bob Brest Buick, Inc.,* 136 B.R. 322, 323–324 (Bankr. D.Mass.1991). Setoff, on the other hand, is the satisfaction of an obligation by the credit-

---

3. The Debtor makes the violation-of-the-stay argument only against recoupment, but it is equally valid against a claim for setoff. Like recoupment, setoff is predicated on the existence of a valid reciprocal claim.

4. The United States may move for relief from the automatic stay to commence the proceeding anew.

ing against it of a reciprocal obligation arising from a *distinct* transaction. In bankruptcy, setoff is subject to 11 U.S.C. § 553(a) and to the automatic stay, but recoupment is not and therefore can be applied even where the reciprocal obligations did not both arise before the commencement of the case. *In re University Medical Center*, 973 F.2d at 1079–1080; *In re Mohawk Industries, Inc.*, 82 B.R. at 177.

■■■■ Recoupment merits this more favorable treatment because, in exercising a right of recoupment, a creditor does not interpose an independent, countervailing claim, as in setoff, but, more accurately, only a defense to the debtor's own claim. *United Structures of America, Inc. v. G.R.G. Engineering, S.E.*, 9 F.3d at 999. It aims to limit the debtor's recovery to what is due when viewing the transaction as a whole. *Id.*

> The rationale [of recoupment] is that there is but one recovery due on a contract, and that recovery must be determined by taking into account the mutual benefits and obligations of the contract. Thus, recoupment differs from setoff in that, in recoupment, the plea is intrinsic to the primary cause, whereas with setoff, the plea will be extrinsic to, though in abatement of, the primary cause.

*In re Maine*, 32 B.R. 452, 455 (Bankr. W.D.N.Y.1983).

It follows that when determining whether reciprocal obligations arise from the same transaction, such that recoupment should apply, the Court should ask whether the obligation being interposed by the creditor "is intrinsic to the primary cause." Thus the Courts have tended to construe the "same transaction" requirement rather narrowly.

> For the purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved and that a similar subject matter gave rise to both claims, ... does not mean that the two arose from the 'same transactions.'" [*Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984)]. Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.

*In re University Medical Center*, 973 F.2d at 1081.

The *University Medical Center* case is very much like our own. In that case, the debtor, a medical center, had received funding under the federal Medicare program. The debtor's participation in the program was governed by a "provider agreement," which established the debtor's eligibility to receive reimbursement payments, in accordance with the Medicare statute, for services rendered to Medicare beneficiaries. In 1988, when the debtor filed its petition under Chapter 11 of the Bankruptcy Code, it was obligated to the Department of Health and Human Services ("HHS") for overpayments made to the debtor from 1985 through 1987. To recover these overpayments, HHS withheld reimbursement payments it owed the Debtor for services rendered in 1988. The debtor then charged that such withholding was a violation of the stay. HHS defended by arguing that there was no violation of the stay because the withholding was justified by the doctrine of recoupment.

The Third Circuit agreed that unlike setoff, recoupment was not subject to the automatic stay. *In re University Medical Center*, 973 F.2d at 1079. However, it also held that the Debtor's 1988 claims for reimbursement did not arise out of the "same transaction," for purposes of recoupment, as HHS's claims for recovery of earlier overpayments. Therefore, the court concluded, the withholding could not be justified as recoupment.

In holding that the parties' reciprocal claims did not arise from the same transaction, the Court made the following points. First, the fact that a contract exists between the debtor and creditor does not automatically enable the creditor to effect a recoupment. *Id.* at 1080. Second, "the typical situation in which equitable recoupment can be invoked involves a credit and debt arising out of a transaction *for the same goods or services." Id.* at 1081 (emphasis added). Third, the provider agreement between HHS and the debtor was quite unlike this typical situation in that it did not provide for a defined transaction or even series of transactions. Rather, it merely established a rela-

tionship between the parties—if the debtor treated eligible patients, HHS would reimburse it for its costs—and contemplated many transactions within that relationship over an extended period of time. And fourth, payments were based on services rendered, and the account reconciliation process established by the Medicare Act and regulations, which were incorporated into the provider agreement, worked on an annual basis. Consequently, "the 1988 payments were independently determinable and were due for services completely distinct from those reimbursed through the 1985 payments." *Id.*

Recovery of the 1985 overpayment, therefore, is the final act of the transactions that began in 1985. [The debtor's] 1988 postpetition services were the beginning of transactions that would stretch into the future, but they were not part of the 1985 transactions. To conclude that these claims arose from the same transaction for the purposes of equitable recoupment would be to contort that doctrine beyond any justification for its creation.

*Id.* at 1082.

The facts in the present case are very similar to those in *University Medical Center.* The contract is similar in that it created an open-ended relationship that would govern many individual transactions, wherein Pell Grants made for the benefit of individual students would be paid to the Debtor for providing educational services to those students. The contract also included a periodic accounting requirement: the Debtor was required bi-annually to account for its

application of the funds received from the Department of Education, and to refund any monies for which it could not account. The transactions were distinct from each other. Payments for services rendered before the accounting was due were independently calculable from payments for services rendered afterward. For these reasons the Court concludes that the compensation the Debtor now seeks does not arise from the same transactions as those for which the United States seeks a refund.[5] Therefore, the doctrine of recoupment does not apply. Instead, the offsetting of these reciprocal claims is properly categorized as setoff.

### c. Setoff

■■■ In the alternative, the United States moves for relief from the automatic stay to exercise its right of setoff. In bankruptcy, the exercise of a creditor's prepetition right of setoff is subject to the automatic stay, § 362(a)(7).[6] The stay does not defeat the right of setoff. Rather, by necessitating a motion for relief from the stay to effect a setoff, it merely creates a mechanism by which setoff, which usually is marked by no event at all other than perhaps an accounting adjustment, can be subject to an orderly examination. *Matter of Corland Corp.,* 967 F.2d 1069, 1076 (5th Cir.1992); 4 Lawrence P. King *et al.,* Collier on Bankruptcy ¶ 553.05[2] (15th ed. 1995); H.R.Rep. 595, 95th Cong., 1st Sess. 342 (1977); S.Rep. 989, 95th Cong., 2d Sess. 51 (1978).

■■■ The exercise of setoff in bankruptcy is circumscribed by § 553(a) of the Bankruptcy Code.[7] It provides that a credi-

---

5. The decision in *In re Bob Brest Buick, Inc.,* 136 B.R. at 323–324 does not require a different result. That case too involved a single contract that contemplated many transactions over time and a continuous stream of debits and credits. But unlike the PPA in this case, the contract in *Bob Brest Buick* expressly provided for monthly balancing and settling of their reciprocal obligations. Thus the contract itself defined the parties' rights. The court cited *Charter Crude Oil Co. v. Exxon Company (In re The Charter Company),* 913 F.2d 1575 (11th Cir.1990) for the proposition that a "net settlement" provision in the parties' contract would control. *Id.* at 1578.

6. Section 362(a)(7) extends the automatic stay to "the setoff of any debt owing to the debtor that

arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7).

7. Section 553(a) states:

(a) Except as otherwise provided in this section and in sections 362 and 362 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

(1) the claim of such creditor against the debtor is disallowed;

tor having a right of setoff against the debtor under nonbankruptcy law may exercise that right in bankruptcy if (a) the debtor and creditor are indebted to each other, in the same right and standing in the same capacity; (b) both debts arose prior to the commencement of the bankruptcy case; and (c) the setoff does not fall within one of the three exceptions enumerated in parts (1), (2), and (3) of § 553(a). *In re Dillard Ford, Inc.,* 940 F.2d 1507, 1512 (11th Cir.1991); *In re Public Service Co. of New Hampshire,* 884 F.2d 11, 14 (1st Cir.1989); 11 U.S.C. § 553(a). But a creditor's prepetition claim against the debtor may not be setoff against the creditor's postpetition obligation to the debtor. *Cooper–Jarrett, Inc. v. Central Transport, Inc.,* 726 F.2d 93, 96 (3rd Cir. 1984); *In re Davidovich,* 901 F.2d 1533, 1538 (10th Cir.1990); *In re Pineview Care Center, Inc.,* 142 B.R. 677, 683 (Bankr.D.N.J.1992); *In re Hill,* 19 B.R. 375, 380 (Bankr.N.D.Tex. 1982).

The Trustee does not deny that the Debtor and the United States are indebted to each other in the same right and in the same capacity. Nor does he contend that the proposed setoff falls within any of the three exceptions enumerated in § 553(a). He objects to this setoff only on the basis that, as he contends, the United States' obligation to the Debtor arose postpetition, such that the reciprocal debts did not both arise before the commencement of the bankruptcy case. The United States disagrees, arguing that its obligation arose prepetition. The parties agree

that the Debtor's obligation to the United States arose prepetition.

The Debtor argues that its claim against the United States arose postpetition because (1) it was owed for educational services that were rendered postpetition and (2) it was approved by the Department of Education postpetition. The United States responds that the debt arose prepetition because the specific claims at issue can be traced to students who became eligible for Pell Grants prior to the Debtor's bankruptcy filing. The United States contends that by virtue of the PPA, it was obligated to pay a student's Pell Grant award to the Debtor as soon as the Debtor confirmed that student's eligibility to receive the award, regardless of whether the Debtor submitted its claim for reimbursement immediately upon determining a student's eligibility, or later, after completion of the educational services.[8]

■ For setoff purposes, a debt that was unmatured at the time of the bankruptcy filing will nonetheless be deemed to have arisen prepetition if the right to payment arose before the filing. *Matter of United Sciences of America, Inc.,* 893 F.2d 720, 724 (5th Cir.1990); *In re Braniff Airways, Inc.,* 42 B.R. 443, 451 (Bankr.N.D.Tex.1984). Therefore, the crucial date is that on which the right to payment arose.

The Debtor's claims against the United States are claims that the Secretary agreed to pay pursuant to his authority under 34 C.F.R. § 668.26.[9] In relevant part, that sec-

---

(2) such claim was transferred, by an entity other than the debtor, to such creditor—
  (A) after the commencement of the case; or
  (B)(i) after 90 days before the date of the filing of the petition; and
  (ii) while the debtor was insolvent; or
(3) the debt owed to the debtor by such creditor was incurred by such creditor—
  (A) after 90 days before the date of the filing of the petition;
  (B) while the debtor was insolvent; and
  (C) for the purpose of obtaining a right of setoff against the debtor.

8. Beyond stating their respective positions, the parties have submitted no evidence or law on the issue of when the United States became obligated to pay these awards.

9. This subsection provides:

(d)(1) An institution may use funds that it has received under the Federal Pell Grant or PAS Program or a campus-based program or request additional funds from the Secretary, under conditions specified by the Secretary, if the institution does not possess sufficient funds, to satisfy any unpaid commitment made to a student under that Title IV, HEA program only if—
  (i) The institution's participation in that Title IV, HEA program ends during a payment period;
  (ii) The institution continues to provide, from the date that the participation ends until the scheduled completion date of that payment period, educational programs to otherwise eligible students enrolled in the formerly eligible programs of the institution;
  (iii) The commitment was made prior to the end of the participation; and

tion provides that an institution whose participation in the Pell Grant Program was terminated may seek reimbursement of funds "committed" prior to termination. 34 C.F.R. § 668.26(d)(1). One condition of that reimbursement is that the institution must continue to provide to the eligible students, until the end of the relevant payment period, the educational programs for which the funds were committed. 34 C.F.R. § 668.26(d)(1)(ii). This regulation thus makes clear that Pell Grant funds are committed before the institution actually provides the educational programs for which they are committed. Had the funds not been committed prior to termination, the Secretary could not have agreed to pay the Debtor's postpetition claims. The Court concludes that the Debtor's right to payment arose when the funds were committed, that is, when the Debtor confirmed that students' eligibility to receive the awards at issue, an event that occurred prepetition.

The date on which the Department of Education approved the claims for payment is irrelevant. By approving the claims, the Department was merely confirming that events had transpired that gave rise to the right to payment. The approval of the claim did not itself create the right to payment.

Nor did the Debtor's provision of educational services give rise to the right to payment. Under the regulations, the funds are committed before the educational program is provided. This makes good sense: a student relying on federal aid to finance his or her education will not contract to pay for it until he or she has a commitment on the aid; nor will the educational institution commit to providing the educational program until the funding is committed. It is true that if, after receiving payment, the Debtor failed to provide the services for which funding had been paid, the Debtor would later be obligated to refund the payments. But the fact that a refund may subsequently be due does not nullify the original commitment. It merely adjusts for subsequent events. The right to payment arises upon commitment,

subject to the condition that if services are not provided as was contemplated, the funding would be refunded. The crucial event is the commitment, and the Debtor does not deny that with respect to the claims at issue, the funds were committed prepetition. Therefore, the United States is entitled to relief from the automatic stay to effect a setoff.

## CONCLUSION

For the reasons set forth above, a separate order will enter denying the United States' motion for a declaration entitling it to exercise a right of recoupment and granting the United States relief from the automatic stay to effect a setoff.

---

(iv) The commitment was made for attendance during the payment period or a previously completed payment period.

34 C.F.R. § 668.26(d)(1).