In re AFFILIATED OF FLORIDA, INC., Debtor.

Affiliated of Florida, Inc., Plaintiff,

v.

Mount Olive Pickle Co., Inc., Defendant.

No. 97–5832–8G1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Aug. 9, 2000.

Kell C. Williams III, Langford & Hill, P.A., Tampa, FL, Scott A. Stichter, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Debtor/Plaintiff.

Randall P. Mueller, Carey, O'Malley, Whitaker & Manson, P.A., Tampa, FL, for Defendant.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the Motion for Summary Judgment filed by the Defendant, Mount Olive Pickle Company, Inc. (Mount Olive).

On May 19, 1997, Mount Olive filed a Proof of Claim in the Debtor's Chapter 11 case in the amount of $29,710.63.

The Debtor, Affiliated of Florida, Inc., commenced this adversary proceeding by filing an Objection to Mount Olive's Claim, together with a Counterclaim against Mount Olive. On September 24, 1999, the Debtor filed an Amended Objection to Claim Number 170 Filed by Mount Olive Pickle Co., Inc. and Counterclaim for Declaratory Relief to Determine Extent, Validity and Priority of Lien and to Recover Money Owed. In the Objection and Counterclaim, the Debtor generally seeks a determination that Mount Olive is not entitled to assert any right of setoff against the Debtor, and also seeks a judgment in its favor against Mount Olive in an amount equal to certain credits issued by Mount Olive prior to the filing of the bankruptcy petition.

In response, Mount Olive primarily contends that the issue of setoff is not involved in this case, contrary to the assertion of the Debtor. Instead, according to Mount Olive, the calculation of the claim was appropriate under the distinct doctrine of recoupment. Mount Olive contends that there is no genuine issue as to any material fact, and that it is entitled to a judgment as a matter of law with respect to all claims asserted in the Debtor's Objection and Counterclaim.

### Background

The Debtor is a wholesale distributor of food products and is owned by its retailer members. The Debtor owned all of the stock of a separate corporation known as Affiliated Military Sales, Inc. (Affiliated Military). The Debtor supplied food products to its retailer members and also, through Affiliated Military, to military bases and commissaries in several states.

Mount Olive is a manufacturer of pickle products.

The Debtor and Mount Olive engaged in a long-term business relationship pursuant to which the Debtor would purchase products from Mount Olive for ultimate distribution either to its retailer members or to military bases. John Bradley Kelly, the controller for the Debtor, described the relationship:

> Affiliated bought product from Mount Olive, both for its retail customer base and its military customer base. Those products were warehoused in the main warehouse in Tampa and were delivered on an as-ordered basis to both independent retailers and military bases in the southeast.

(Exhibit C to Motion for Summary Judgment, Deposition transcript of John Bradley Kelly, p. 18). Mr. Kelly testified that the parties maintained their accounting as follows:

> Affiliated would order. Product would come in. Affiliated would at that point create a payable for that product. And I assume Mount Olive created a receivable on the reverse end.
>
> On the retail side, the product was shipped as ordered and the bills were sent to the retailer, the independent person that bought the product.
>
> On the military side, the product was ordered and shipped back to the military bases. That product was then rebilled back to Mount Olive at cost, and Affiliated was compensated what was called a dreyage fee or a delivery fee for that product.
>
> . . .
>
> So the product that was—some product that was brought in by Affiliated from Mount Olive was billed back to Mount Olive at cost. And Mount Olive

then turned around and billed the military.

The military contracts between Affiliated and the bases was—there was no contract between the military and Affiliated. We were just a delivery party. The actual billing was done by Mount Olive to the military commissaries.

. . .

Our agreement was with Mount Olive to deliver their product to the southeastern military bases. We did not bill the military direct for that product.

. . .

Affiliated provided Mount Olive—I'm sure there's some in there—with a summary of what product of theirs was delivered and to what bases it was delivered. And every 15 days, the 15th and the last day of the month, that was summarized and a credit was issued back to Affiliated by Mount Olive.

(Exhibit C to Motion for Summary Judgment, Deposition transcript of John Bradley Kelly, pp. 20–22).

The Debtor filed its petition under chapter 11 of the Bankruptcy Code on April 14, 1997.

On the date of the filing of the petition, the amounts of the invoices outstanding from Mount Olive to the Debtor totaled $94,324.87, and the amounts of the credits issued by Mount Olive to Affiliated totaled $64,603.12.

On May 19, 1997, Mount Olive filed its proof of claim in the chapter 11 case. The claim was filed as an unsecured claim in the amount of $29,710.63. The proof of claim form contains a preprinted statement:

CREDITS AND SETOFFS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

(Exhibit A to Motion for Summary Judgment, Proof of Claim of Mount Olive Pickle Co., Inc. dated May 19, 1997).

On September 24, 1999, the Debtor filed its Amended Objection to Claim Number 170 Mount Olive, together with its Counterclaim for Declaratory Relief to Determine Extent, Validity and Priority of Lien and to Recover Money Owed. The Counterclaim includes five counts. Count I is an action for a declaratory judgment that Mount Olive has no right of setoff. Count II is an action for a determination that Mount Olive's right of setoff, if any, is inferior to the lien of Congress Financial Corporation and National Consumer Cooperative Bank. Count III is an action on open account seeking a judgment in the amount of the credits issued by Mount Olive, plus interest. Count IV is an action to recover a preference. Count V is an action to recover a fraudulent transfer.

### Counts I and II—Recoupment

#### A. General principles.

Mount Olive contends that the amount set forth in its Proof of Claim is intended to represent the difference between the amount of the outstanding invoices submitted to the Debtor by Mount Olive as of the date of the petition, and the amount of the credits issued to the Debtor by Mount Olive as of that date. In other words, Mount Olive contends that it had already taken the credits into consideration when it prepared its claim. (Motion for Summary Judgment, p. 3). Additionally, Mount Olive asserts that the payables and the credits which form the basis of the Claim arose from the same transaction or series of transactions. Consequently, Mount Olive contends that the issue of setoff is not involved in this case, contrary to the assertion of the Debtor. Instead, according to Mount Olive, the calculation of the Claim was appropriate under the distinct doctrine of recoupment.

The Circuit Courts of Appeal appear to agree on the fundamental principles regarding the theory of recoupment.

First, recoupment is explained as "the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." *Newbery Corporation, et al. v. Fireman's Fund Insurance Company, et al.*, 95 F.3d 1392, 1399 (9th Cir.1996)(quoting 4 Collier on Bankruptcy ¶ 553.03, at 553–15 (15th ed.1995))(Emphasis in original). Recoupment is essentially a defense to a debtor's claim against a creditor. *In re United States Abatement Corporation*, 79 F.3d 393, 398 (5th Cir.1996). In the bankruptcy context, recoupment has evolved absent any statutory basis where a creditor's claim is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation. *In re Davidovich*, 901 F.2d 1533, 1537 (10th Cir. 1990).

The Eleventh Circuit Court of Appeals recognized the theory underlying the doctrine when it set forth the three elements that a party must show to establish its claim for recoupment. The party must show (1) that the debtor's claim and the creditor's claim arose from the same transaction, (2) that the creditor is asserting its claim as a defense, and (3) that the "main action" is timely. *In re Smith*, 737 F.2d 1549, 1553 (11th Cir.1984).

Most of the cases involving the doctrine appear to center on whether the claims arose from the "same transaction." In bankruptcy cases, the term "transaction" is interpreted restrictively in view of the Bankruptcy Code's policy favoring equality of treatment among creditors. *In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998). "Recoupment is 'narrowly construed' in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors." *In re Peterson Distributing, Inc.*, 82 F.3d 956, 959 (10th Cir.1996). The doctrine operates as an exception to the bankruptcy principle that all unsecured creditors of a debtor stand on equal footing for payment of their claims. *In re United States Abatement Corp.*, 79 F.3d at 398.

Under the doctrine of recoupment, a debtor's demand must arise from the same, integrated transaction as the claim against it. *Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 500 (3d Cir.1998). Since recoupment is an equitable, nonstatutory exception to the automatic stay, it should be limited in bankruptcy cases to situations in which both debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. *In re Malinowski*, 156 F.3d at 133(quoting *In re University Medical Ctr.*, 973 F.2d 1065, 1081 (3d Cir.1992)). See also *In re Flagstaff Realty Associates*, 60 F.3d 1031, 1035 (3d Cir.1995) and *United States v. Dewey Freight System*, 31 F.3d 620, 623 (8th Cir.1994). "In light of recoupment's equitable foundation, the doctrine is only applicable to claims that are so closely intertwined that allowing the debtor to escape its obligation would be inequitable notwithstanding the Bankruptcy Code's tenet that all unsecured creditors share equally in the debtor's estate." *In re Peterson Distributing, Inc.*, 82 F.3d at 960.

The Circuit Courts of Appeal have attempted to set forth guidelines for determining whether a credit and an obligation arose from the "same transaction" for purposes of applying the doctrine of recoupment. See, for example, *In re Malinowski*, 156 F.3d at 134, in which the Third Circuit stated that a credit and an obligation are not part of the same transaction where "the circumstances that gave rise to the credit and those giving rise to the creditor's obligation to the debtor do not result from a set of reciprocal contractual obligations or from the same set of facts." It appears, however, that Courts generally apply a fact-based approach to whether claims arose from the same transaction.

Not surprisingly, given the equitable nature of the doctrine, courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and the equities of each case. *United States v. Dewey Freight System*, 31 F.3d at 623. In other words, Courts look to the "substantive nature of the transactions," rather than solely to the accounting adjustments used to measure them. *In re Healthback, L.L.C.*, 226 B.R. 464, 477 (Bankr.W.D.Okla.1998).

**B. Application.**

■ In this case, no written agreement between the Debtor and Mount Olive appears in the record. It is clear, however, that the Debtor and Mount Olive engaged in a long-term business relationship in accordance with a specific course of dealing. Richard D. Bowen, the Vice President—Finance for Mount Olive, states that neither the Debtor nor Mount Olive are certain as to why specific practices developed in connection with the course of dealing. (Exhibit B to Motion for Summary Judgment, Affidavit of Richard D. Bowen, ¶ 6). Nevertheless, it is agreed that the parties followed consistent business practices.

Generally, the Debtor ordered product from Mount Olive. The product was not ordered on an as-needed basis. (Deposition transcript of John Bradley Kelly, p. 23). Instead, when the product was received from Mount Olive, it was placed in the Debtor's warehouse. The Debtor maintained a "running inventory" in the warehouse. (Deposition, p. 23). It appears that Mount Olive submitted a bill to the Debtor for the product, although it is unclear whether the bill was submitted when the product was shipped or was submitted subsequently.

In any event, at some point in time after placement of product in its warehouse, the Debtor re-sold either some or all of the product that it had received from Mount Olive. The re-sale may have occurred within fifteen days of the date of receipt, or it may have occurred thereafter. Further, the sale may have been to the Debtor's retail members, or it may have been to a military base.

If the Debtor sold product to one of its retail members, it appears that the Debtor billed the member directly and paid Mount Olive the amount set forth on the invoice submitted by Mount Olive to the Debtor.

If the Debtor sold product to a military base, however, the Debtor did not bill the military base. Instead, on the first and fifteenth day of each month, the Debtor sent a summary to Mount Olive of its product that had been sold to military bases, together with the identity of the base. Mount Olive then billed the military base, and issued a credit to the Debtor for the cost of the product plus a delivery fee.

With respect to the Debtor's re-sale of product, John Bradley Kelly stated that "you could not attach the outbound product to a single shipment," due to the "running" nature of the Debtor's inventory. (Deposition transcript, p. 23). Additionally, Kelly stated that "it wasn't one big delivery of product and then one mass sale. They're the ordinary-course-of-business transactions over what appears to be a period of time." (Deposition transcript, p. 34). Finally, even Richard D. Bowen, an officer of Mount Olive, stated that the credit issued to the Debtor was in the amount of the price "last charged" by Mount Olive to the Debtor for the product sold, indicating that Mount Olive did not necessarily match up the credit to a specific shipment of product. (Affidavit of Richard D. Bowen, ¶ 7).

The Court finds that the payables owed by the Debtor to Mount Olive, and the credits issued by Mount Olive to the Debtor, did not arise from the "same transaction" for purposes of the recoupment doctrine. The relationship between the parties in this case is akin to the relationship established in *In re Healthback*, 226 B.R. 464 (Bankr.W.D.Okla.1998). In *Healthback*, the United States Depart-

ment of Health and Human Services withheld funds from current Medicare reimbursement payments owed to the chapter 11 debtor, to apply against overpayments previously made to the Debtor. *In re Healthback*, 226 B.R. at 468. The Department contended that it was entitled to withhold the funds pursuant to the doctrine of recoupment. *Id.* at 475.

The Bankruptcy Court found that the doctrine of recoupment did not apply because the Medicare reimbursement scheme did not constitute a "single, integrated transaction." *Id.* at 479. The Court relied on the reasoning of the Tenth Circuit Court of Appeals in *In re Peterson Distributing, Inc.*, 82 F.3d 956 (10th Cir. 1996) to conclude that several components of a relationship must be "integrated" to constitute a "single transaction" for recoupment purposes. *In re Healthback*, 226 B.R. at 476.

In *Healthback*, the Court acknowledged that the Medicare reimbursement contract with the debtor was open-ended to the extent that it evidenced an on-going relationship. The Court also found, however, that each provision of services by the debtor to a patient was a separate transaction. *Id.* at 477.

What the Secretary is attempting to do is to use this manufactured accounting device in substitution for the substantive nature of the transactions, which are, in reality, separate and distinct. Thus, even though the contract between the Department of Health and Human Services apparently provides for a continuous stream of estimated interim payments, the contract, in fact, consists of a series of separate transactions which are only finally accounted for at the end of each cost year. The accounting and final adjustment by the Department of Health and Human Services must, necessarily, depend upon the amounts the debtor claims for each separate transaction between it and its patients.

Thus, under the standard provided by the Tenth Circuit, it is apparent that, even though there is only one contract between the debtor and the Department of Health and Human Services, this one contract covers a number of separate and discrete transactions and this contract does not constitute a "single integrated transaction". (Citation omitted). These separate transactions are not so inextricably intertwined or integrated that they must be considered one transaction.

*Id.* at 477–78. In that case, each service to a patient was the guide for determining independent transactions, despite the continuous reimbursement scheme. *Id.* at 478.

Similarly, in *In re Women's Technical Institute*, 200 B.R. 77 (Bankr.D.Mass. 1996), the United States and the debtor entered into a contract whereby the Department of Education agreed to transfer funds to the debtor for students eligible to participate in the Pell Grant program, and the debtor promised to return to the United States any funds for which no proper accounting had been made. In the debtor's bankruptcy case, the United States sought to satisfy its obligation to the estate for Pell Grant funds by crediting it against the amount owed to it by the debtor for funds for which the debtor had not properly accounted. *In re Women's Technical Institute*, 200 B.R. at 79.

The Bankruptcy Court defined recoupment as the satisfaction of an obligation by crediting against it a reciprocal obligation arising from the same transaction. *Id.* at 80. In determining whether reciprocal obligations arise from the same transaction, the Court determined that the appropriate inquiry was whether the obligation owed to the creditor was "intrinsic to the primary cause." *Id.* at 81.

In *Women's Technical Institute*, the Court concluded that the doctrine of recoupment was not applicable. The underlying agreement between the parties created an open-ended relationship designed to

govern many individual transactions, provided for a periodic accounting between the parties, and covered transactions that were distinct from each other. *Id.* at 82. Consequently, the funds sought by the debtor did not arise from the same transactions as those for which the United States sought a refund. *Id.*

In the case under consideration, it appears that the payable owed by the Debtor to Mount Olive arose from the purchase of product by the Debtor for general placement in its warehouse. The ultimate destination of the product was unknown at the time that the Debtor purchased it from Mount Olive. The credit issued by Mount Olive, however, arose from the Debtor's re-sale of Mount Olive's product to military bases, since Mount Olive billed the military directly. Other Mount Olive product was resold to the Debtor's retail members, and those sales did not generate any credits. As a result, at the time that the Debtor originally purchased the product from Mount Olive, it was unknown whether the Debtor's re-sale of the product would result in a credit in its favor. As in *Healthback* and *Women's Technical Institute,* the agreement between the Debtor and Mount Olive created an ongoing, open-ended relationship covering multiple separate and distinct transactions. The "logical relationship" between the purchase of product by the Debtor and the Debtor's re-sale of that product to military bases is insufficient to justify recoupment in a bankruptcy context. *In re Treco,* 229 B.R. 280, 293 (Bankr.S.D.N.Y.1999).

The payable owed by the Debtor and the credit issued by Mount Olive did not arise from the same transaction. Mount Olive should not be permitted to apply the principles of recoupment in this case.

### Count III—Open account

Mount Olive contends that it is entitled to the entry of a summary judgment in its favor as to Count III of the Counterclaim. Count III is a suit on an open account. Mount Olive asserts that the Debtor did not allege all of the elements required to

state a claim on an open account, and did not attach a copy of the account as set forth in Form 1.932 of the Florida Rules of Civil Procedure.

Mount Olive previously filed a Motion to Dismiss or for More Definite Statement, or Alternatively, for Abstention in this proceeding. (Document 5). In that Motion, Mount Olive requested the Court to dismiss Count III of the Counterclaim because the Debtor did not attach the agreement or the account between the parties. The Court subsequently entered an Order on the Motion, which provided in part that "the allegations in Count III sufficiently state a cause of action, and that any additional information required by Mount Olive may be obtained through discovery." Mount Olive's Motion to Dismiss was denied. (Document 14).

Since the entry of the Order denying its Motion to Dismiss, Mount Olive has filed a Notice of Service of its First Set of Interrogatories to Affiliated (Document 25), and a First Request for Production of Documents to Affiliated (Document 26). Mount Olive thereafter filed a Motion to Compel Discovery from the Debtor (Document 31), but withdrew the Motion after it had been scheduled for hearing by the Court. The Debtor's Answers to Mount Olive's Interrogatories are attached as Exhibit F to Mount Olive's Motion for Summary Judgment. Additionally, Mount Olive took the deposition of a representative of the Debtor and reviewed documents produced by the Debtor at that time. (Exhibit C to Motion for Summary Judgment, Deposition transcript of John Bradley Kelly).

The Court has considered the record in this case, including the discovery that has been undertaken, and determines that Mount Olive's Motion for Summary Judgment as to Count III of the Counterclaim should be denied.

### Counts IV and V

Counts IV and V are actions to recover any setoffs effected prior to the filing of

the Bankruptcy petition pursuant to § 547 and § 548, respectively.

Mount Olive asserts in its Motion for Summary Judgment that it is entitled to the entry of a Summary Judgment as to Counts IV and V of the Counterclaim "because Affiliated has admitted that it has no evidence to support either claim and Affiliated is therefore not pursuing the claims." (Motion for Summary Judgment, p. 8). Mount Olive cites the deposition of John Bradley Kelly and the Debtor's Answers to Mount Olive's Interrogatories.

In its response to Mount Olive's Motion for Summary Judgment, the Debtor stated that it added the avoidance actions to its Counterclaim because it "was concerned that Mount Olive's answer would assert a right of setoff and the Debtor would be precluded from challenging the transaction by virtue of § 546's two year statute of limitations. If Mount Olive is not alleging that any setoffs occurred prior to the Filing Date, the Debtor consents to summary judgment being granted in Mount Olive's favor on Counts IV and V." (Debtor's Memorandum in Opposition to Mount Olive's Motion for Summary Judgment, pp. 21–22).

The record is unclear as to whether Mount Olive is asserting that any setoff occurred prepetition.

First, Mr. Kelly actually testified in his deposition that he was not aware of any facts to support the allegations contained in Counts IV and V *other than* what the proof—how the proof of claim reads," and later testified that the "only attempt at a pre-petition setoff that I would be aware of would be this claim as an unsecured nonpriority claim reduced by the roughly $34,000 that was due to Affiliated." (Exhibit C to Motion for Summary Judgment, Deposition transcript of John Bradley Kelly, p. 55)(Emphasis supplied).

Further, Mount Olive's Second Defense to the Counterclaim, encaptioned "Set-off," states the "Mount Olive filed a claim in the amount of $29,710.63 after first deducting from its total claim the amounts that Affiliated owed Mount Olive, as required by paragraph 6 of the Proof of Claim form which states 'CREDITS AND SET-OFFS:... In filing this claim, claimant has deducted all amounts that claimant owes to debtor.'" (Document 23).

In this Order, the Court has determined that Mount Olive is not entitled to apply the credits under the doctrine of recoupment. It is not clear, however, whether Mount Olive effectuated a prepetition setoff of the payable owed by the Debtor against the credits issued by Mount Olive. Accordingly, Mount Olive's Motion for Summary Judgment as to Counts IV and V should be denied.

### Conclusion

Count I is an action for a declaratory judgment that Mount Olive has no right of setoff, and Count II is an action for a determination that Mount Olive's right of setoff, if any, is inferior to certain prior perfected security interests. In its Motion for Summary Judgment, Mount Olive contends that the issue of setoff is not involved in this case, since its claim was appropriate under the distinct doctrine of recoupment. The Court finds that the Debtor's claim against Mount Olive and Mount Olive's claim against the Debtor do not arise out of the "same transaction" for purposes of recoupment. Although the parties' engaged in an on-going business relationship, the relationship involved separate and discrete transactions which gave rise to the claims. Since the claims did not arise out of the same transaction, Mount Olive should not be permitted to apply the doctrine of recoupment in this case.

Count III is a suit on an open account. Mount Olive contends that it is entitled to summary judgment as to Count III because the Debtor failed to allege all of the elements of the cause of action and attach a copy of the account. In view of the record in this case, including discovery undertaken by the parties, Mount Olive's Motion should be denied as to Count III.

Finally, Counts IV and V are avoidance actions pursuant to § 547 and § 548 of the Bankruptcy Code, respectively. The Court cannot determine whether Mount Olive is alleging that certain prepetition setoffs occurred, and therefore cannot determine whether the Debtor consents to the entry of a judgment in Mount Olive's favor. The Motion for Summary Judgment should be denied as to Counts IV and V.

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Defendant, Mount Olive Pickle Company, Inc., is denied.